FILED
2/1/2022
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT
AK

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DONALD HENKEL,<br>a/k/a "D.B. Henkel,"<br>a/k/a "Donavan Kelly,"<br>a/k/a "Bruce Kelly" | Case No. 1:22-CR-00058<br><br>Violation: Title 18, United States Code, Section 1343<br><br>**UNDER SEAL**<br><br>JUDGE BUCKLO<br>MAGISTRATE JUDGE FINNEGAN |

The SPECIAL MAY 2021 GRAND JURY charges:

1. At times material to this Indictment:

    a. Defendant DONALD HENKEL resided in Cedar, Michigan.

    b. Victim 1 was an auction house engaged in the business of selling artwork at auction. Victim 1 was headquartered in the Northern District of Illinois.

    c. Defendant maintained a bank account at SunTrust Bank ending in number 0683 (the "0683 account").

    d. Defendant also maintained two bank accounts at Chemical Bank ending in 1618 (the "1618 account") and 9410 (the "9410 account").

2. Beginning in or around July 2005, and continuing until in or around July 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

DONALD HENKEL,<br>
also known as "D.B. Henkel,"<br>
also known as "Donavan Kelly,"<br>
also known as "Bruce Kelly,"

defendant herein, and other co-schemers, knowingly devised, intended to devise, and participated in a scheme to defraud and to obtain money from art galleries, auction houses, and individual buyers, including Victim 1, by means of materially false and fraudulent pretenses and representations, and concealment of material facts, as further described below.

3. It was part of the scheme that defendant forged, altered, and applied false signatures to paintings and collectible memorabilia, including sports memorabilia, Hollywood memorabilia, and music memorabilia, to deceive gallery, auction house, and individual buyers into believing the paintings were genuine paintings by prominent American artists and the memorabilia genuinely came from or were associated with a prominent person or group.

4. It was further part of the scheme that defendant purchased various items from various vendors, such as paintings, baseballs, baseball bats, and celebrity photographs as well as other items, and then manipulated those items with various art supplies and techniques to make them falsely appear as genuine works of art or genuine collectible items associated with a prominent person or group.

5. It was further part of the scheme that defendant knowingly provided false accounts of the origin, or provenance, of the paintings and memorabilia, in order to deceive buyers into believing the paintings and memorabilia were genuine and increase the paintings' and memorabilia's value for sale.

6. It was further part of the scheme that defendant recruited and used third parties, or straw sellers, to sell the paintings and memorabilia on his behalf in order to conceal his own connection to the paintings or memorabilia.

7. In was further part of the scheme that defendant provided the straw sellers with instructions on what false information to provide to a buyer or auction house regarding the provenance of the artwork or memorabilia, knowing that such provenance was false, and intending that the straw sellers would repeat these false representations to the buyers, who would rely on such false provenance.

### *Sale of "Stacks Up 1st Ave." purportedly by George Ault*

8. It was further part of the scheme that in or around October 2018, defendant instructed another individual to sell to Victim 1 a painting purportedly by George Ault, titled "Stacks Up 1st Ave.," when defendant knew that it was not a genuine Ault painting, as defendant had painted over another painting and added the Ault signature.

9. It was further part of the scheme that defendant caused Victim 1 to be provided false provenance regarding the painting.

10. It was further part of the scheme that Victim 1 later sold the painting as a genuine work of art for approximately $372,500, and defendant received approximately $229,500 of the proceeds to the 1618 account.

### *Sale of "Coming Home," purportedly by Gertrude Abercrombie*

11. It was further part of the scheme that in or around April 2019, defendant contacted Victim 1 regarding consigning for sale a painting purportedly by Gertrude Abercrombie and titled "Coming Home."

12. It was further part of the scheme that defendant falsely represented to Victim 1 that "Coming Home" was painted by Gertrude Abercrombie, when defendant knew that he had painted over another painting and added the Abercrombie signature.

13. It was further part of the scheme that defendant provided Victim 1 with a false provenance for the painting.

14. It was further part of the scheme that the painting sold at auction as a genuine work of art for approximately $93,750, and Victim 1 wired approximately $66,375 to the 0683 account controlled by defendant, for the sale of the painting.

### *Sale of "Morning in Brooklyn," purportedly by George Ault*

15. It was further part of the scheme that in or around May 2019, defendant instructed an individual to sell to Victim 1 a painting purportedly by George Ault and titled "Morning in Brooklyn," when defendant knew that it was not a genuine Ault painting, as defendant had painted over another painting and added the Ault signature.

16. It was further part of the scheme that defendant caused Victim 1 to be provided false provenance regarding the painting.

17. It was further part of the scheme that the painting was sold at auction as a genuine work of art for approximately $336,500 and defendant received over $200,000 of the proceeds.

18. It was further part of the scheme that defendant misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the existence, purpose, and acts done in furtherance of the scheme.

19. On or about June 26, 2019, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

> DONALD HENKEL,
> also known as "D.B. Henkel,"
> also known as "Donavan Kelly,"
> also known as "Bruce Kelly,"

defendant herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate and foreign commerce certain writings, signs, and signals, namely, an interstate wire transmission of approximately $66,375, from a location in Illinois, in connection with the sale of the painting purportedly by Gertrude Abercrombie and titled "Coming Home," through the Federal Reserve System, from Victim 1's account at CIBC (Canadian Imperial Bank of Commerce), U.S., through servers located outside Illinois, to defendant's 0683 account at SunTrust Bank;

In violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

The SPECIAL MAY 2021 GRAND JURY further alleges:

1. Upon conviction of an offense in violation of Title 18, United States Code, Section 1343, as set forth in this Indictment, defendant shall forfeit to the United States of America any property which constitutes and is derived from proceeds traceable to the offense, as provided in Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. The property to be forfeited includes, but is not limited to:

   a. a personal money judgment in the amount of approximately $673,366.71; and

   b. the following specific property:

      i. approximately $164,881.11 seized on or about July 7, 2020, from the 0683 account held in defendant's name;

      ii. approximately $349,335.18 held in escrow by the U.S. Marshals Service, from the sale of the real property commonly known as 9169 E. Hoxie Road, Cedar, Michigan; and

      iii. the real property commonly known as 795 Cordova Avenue, Ormond Beach, Florida, legally described as follows:

         LOTS 11, 12, AND 13, BLOCK 23, SECTION "A" RIO VISTA, ACCORDING TO THE MAP OR PLAT THEREOF, AS RECORDED IN MAP BOOK 6, PAGE 25, OF THE PUBLIC RECORDS OF VOLUSIA COUNTY, FLORIDA.

3. If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the

jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code Section 853(p).

A TRUE BILL:

_____

FOREPERSON

_____

signed by Steven J. Dollear on behalf of the
UNITED STATES ATTORNEY